[Cite as *State v. Johnson*, 2012-Ohio-1344.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96983**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LARRY JOHNSON

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-544379

**BEFORE:** Sweeney, J., Stewart, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** March 29, 2012

**ATTORNEY FOR APPELLANT**

James R. Willis, Esq.
420 Lakeside Place
323 Lakeside Avenue, N.W.
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Patrick J. Lavelle, Esq.
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, J.:

{¶1} Defendant-appellant Larry Johnson ("defendant") appeals the court's denial of his motion to suppress evidence related to his convictions for several drug related offenses. After reviewing the facts of the case and pertinent law, we affirm.

{¶2} On November 16, 2010, Cleveland police responded to a dispatch call reporting shots fired at 3067 W. 47th Street. Several police vehicles arrived at the scene, because the caller reported that the shots were fired from an AK47 assault rifle and that someone was shot inside the house. Dispatch provided additional information over the radio, such as defendant's name as a possible suspect, the involvement of a brown Oldsmobile, and the allegation that more assault rifles were in the house. Also, the address was corrected to 3064 — rather than 3067 — W. 47th Street.

{¶3} Police officers surrounded the house, which is a duplex, and Det. John Graves spoke with the woman who lives in the downstairs unit. She stated that defendant had just run from a black vehicle to the upstairs unit where he lives. Police heard noises and saw a light come on upstairs, although there was no answer when they knocked on the door. Dispatch then broadcasted that the caller just reported that there was a dead body and drugs in the house.

{¶4} Based on this information, the police forcibly entered the house to secure the scene. Defendant and two other males were inside. No one was injured, and there was no dead body. There was, however, a strong odor of marijuana. Asked by police, defendant admitted smoking marijuana and stated that there was marijuana in the

bedroom. Det. Graves asked defendant if the police could search the house, and defendant consented verbally and in writing. The search revealed marijuana, crack cocaine, powder cocaine, drug manufacturing paraphernalia, and a gun in the house.

{¶5} On December 22, 2010, defendant was indicted for three counts of drug trafficking, two counts of drug possession, possession of criminal tools, and having a weapon while under disability. The indictment included major drug offender, juvenile, and firearm specifications.

{¶6} The court held a suppression hearing and, on June 15, 2011, found that probable cause and exigent circumstances existed to justify entry into the home, and the warrantless search was valid because defendant voluntarily consented. The court then denied defendant's motion to suppress. On June 20, 2011, defendant pled no contest to the indictment and the court sentenced him to 13 years in prison.

{¶7} Defendant appeals and raises three assignments of error for our review.

{¶8} I. "The court erred when it denied the appellant's motion to suppress and to exclude illegally seized evidence."

> Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. An appellate court is to accept the trial court's factual findings unless they are clearly erroneous. We are therefore required to accept the factual determinations of a trial court if they are supported by competent and credible evidence. The application of the law to those facts, however, is subject to de novo review. *State v. Polk*, 8th Dist. No. 84361, 2005-Ohio-774, ¶ 2.

{¶9} In the instant case, defendant summarizes his argument as follows:

> [T]his warrantless search was illegal because there are absolutely no objective facts here that support any claim there was any type of urgency

here, and for sure, there was no basis to show for any belief that shots had even been fired, and even less for a belief an injured person was inside the house.

{¶10} Defendant further argues that nothing dispatched over the radio was "verified" or "corroborated" other than that defendant lived in the home in question, and the "officers seemed to be motivated by an intent to arrest and search."

{¶11} Warrantless searches are presumptively unconstitutional, subject to a limited number of specific exceptions, which the state has the burden of proving. *State v. Kessler*, 53 Ohio St.2d 204, 373 N.E.2d 1252 (1978). The Ohio Supreme Court has held that a "warrantless police entry into a private residence is not unlawful if made upon exigent circumstances * * *," including when there is an emergency or urgent situation. *State v. Applegate*, 68 Ohio St.3d 348, 349, 626 N.E.2d 942 (1994). The Ohio and United States Supreme Courts have positively cited the eloquent explanation of exigency found in *Wayne v. United States*, 318 F.2d 205, 212 (D.C.Cir. 1963):

> The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. Fires or dead bodies are reported to police by cranks where no fires or bodies are to be found. Acting in response to reports of "dead bodies," the police may find the "bodies" to be common drunks, diabetics in shock, or distressed cardiac patients. But the business of policemen and firemen is to act, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process. Even the apparently dead often are saved by swift police response. A myriad of circumstances could fall within the terms "exigent circumstances," * * * e.g., smoke coming out a window or under a door, the sound of gunfire in a house, threats from the inside to shoot through the door at police, reasonable grounds to believe an injured or seriously ill person is being held within. *See, e.g., Applegate*, supra; *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

**{¶12}** In analyzing under the Fourth Amendment whether circumstances were exigent, as well as the reasonableness of police action, "[t]he officer's subjective motivation is irrelevant." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.E.2d 650 (2006). In *Stuart*, the court held that the officers' entry was reasonable when they responded to complaints about a loud party in the middle of the night, and upon arrival, heard loud noises and saw an altercation through the window of the house. *Id.* at 406. "It therefore does not matter here — even if their subjective motives could be so neatly unraveled — whether the officers entered the kitchen to arrest respondents and gather evidence against them or to assist the injured and prevent further violence." *Id.* at 405.

**{¶13}** Given this law regarding the exigent circumstances exception to the rule against warrantless searches, we find no merit to defendant's argument that the dispatched information was unverified. Additionally, defendant's allegation regarding the police officers' motivation is not material to the analysis at hand. Rather, we analyze whether exigent circumstances existed under the test this court set forth in *State v. Greene*, 8th Dist. No. 51008 (Oct. 2, 1986), using the following factors:

> (1) the gravity of the offense; (2) that the suspect is reasonably believed to be armed; (3) probable cause that the suspect committed the crime; (4) a strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; (6) that the entry is made peaceably; and (7) the time of entry. The U.S. Supreme Court in *Welsh* [*v. Wisconsin*, 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)] stressed that the gravity of the underlying offense is an important factor to consider.

**{¶14}** In the instant case, the court considered the evidence presented at the suppression hearing and found that the dispatch call was a "Code 1, which is the highest priority call, for shots fired with an AK-47 semiautomatic rifle." Det. Graves thought the call serious enough to bring in the SWAT unit. The caller identified himself and his phone number, remained available to the police, and provided "valuable information," including defendant's name and address, and the suspicion that weapons, drugs, and an injured or dead body would be found in the house. The downstairs tenant told the police that she had just seen defendant running upstairs from a black vehicle, which "somewhat matched the color of a brown vehicle that the caller had stated was on the scene." The neighbor also told Det. Graves that there was a lot of noise coming from the upstairs unit.

**{¶15}** The police also heard the noises coming from upstairs, and they "saw a light go on in the back of the house which confirmed someone was there." Police knocked on the door, however, no one answered. According to Det. Graves, the police were "concerned about whether there was a person who was injured, dying, or dead upstairs." The court stated that, although no bodies or weapons were found, "[t]hose were the facts as the police believed them to be on the night of November 16th, 2010, which came from a caller who they continued to have contact with." The court concluded that "entry was appropriate under the exigent circumstances exception to the search warrant requirement."

**{¶16}** In applying these facts to the *Greene* elements, we find that the suspected offenses could have been as serious and violent as murder. The caller identified

defendant, stated that defendant was armed with an assault rifle and inside the house, and provided information that someone was shot and possibly dead. The neighbor confirmed defendant's identity and that defendant was inside the house, and told police that she heard a lot of noise coming from upstairs. Upon review we find reasonably perceived exigent circumstances. *See State v. Smith*, 1st Dist. No. C-061032, 2007-Ohio-3786, ¶ 21 (finding exigent circumstances when the police "were responding to a report of shots being fired and were trying to resolve the situation for the safety of all involved").

{¶17} The court also concluded that, subsequent to the entry, defendant voluntarily consented to a search of his home. On appeal, defendant concedes that he signed a consent to search. However, he argues that the consent was "not validated by the fact that *Miranda* warnings [were] given if they [were] preceded by an illegal arrest and an illegal search."

{¶18} According to Det. Graves, the police searched defendant's bedroom after he consented. Det. Graves testified that he spoke with defendant after the house was secured. "I asked him about the smell of marijuana. He said that they had been smoking marijuana, and there was marijuana in the house. At that point, I requested a consent to search, and also had an officer get the consent to search [form], read it with him, filled it out, and he signed it."

{¶19} The Cleveland Police report of the incident, which was offered as an exhibit by defendant, is consistent with Det. Graves's testimony. Det. Graves wrote and signed the report, which reads in pertinent part as follows:

After securing the premises all parties were advised of their Miranda rights. The residence reeked of marijuana. * * * When asked about the marijuana smell [defendant] told us there was marijuana in the bedroom. I then reqested permission to conduct a consent search. [Defendant] granted us verbal permission to conduct the consent search then I retrieved [the] Consent to Search Form, [defendant] read and signed it.

{¶20} The report additionally states that, after defendant consented, police recovered marijuana, crack cocaine, powder cocaine, drug manufacturing paraphernalia, and a loaded gun.

{¶21} After the police seized the drugs, Det. Graves took defendant into the bathroom and interviewed him. This interview was videotaped and shown at the suppression hearing. Defendant acknowledged on the videotape that he had been advised of his rights verbally and in writing.

{¶22} Defendant testified at the suppression hearing, however, that the officers began searching his home before getting his consent. Specifically, defendant stated that the police found marijuana in his dresser drawer, then told him to sign the consent form. According to defendant, Det. Graves refused to let defendant read the form and told him that if he did not sign it they would "bring in the dogs and tear the house up." Asked to explain why his testimony was inconsistent with what he stated on the videotape, defendant testified that he was scared at the time of the incident.

{¶23} Upon review, we find that the court's determination that exigent circumstances existed and defendant consented to the search is supported by competent and credible evidence. As such, the court did not err in denying defendant's motion to suppress, and his first assignment of error is overruled.

**{¶24}** Assignments of error two and three will be reviewed together, and they state as follows:

**{¶25}** II. "The court erred and due process was offended when it denied the motion for illegally seized property."

**{¶26}** III. "The court erred when, without a factual basis it forfeited all property seized from the accused."

**{¶27}** Our review of the record shows that defendant did not file a "motion for illegally seized property." Defendant's motion to suppress includes one sentence regarding the seizure and/or forfeiture of property: "In addition, any and all non-contraband property seized should be returned to the defendant." The only other reference to "property" in the record can be found in the transcript of the court's June 15, 2011 ruling on defendant's suppression motion, where the following colloquy took place:

> DEFENSE COUNSEL: I might add also the motion to return the money seized from the Defendant, the State has not offered any evidence or offered any suggestion that he could be connected to any criminal enterprise so I feel the Court ought to order that money returned.

> THE STATE: Your Honor, I don't believe that issue was ever brought to light until just now.

**{¶28}** A sidebar took place, and when the court came back on the record, it stated, "So based on all those findings I find your motion is not well taken * * * and it's denied * * *." Defendant then pled no contest to the indictment, which included forfeiture of three cell phones, money, and a gun. When a defendant pleads no contest, the state must allege facts sufficient to support a felony offense, and the court must find

defendant guilty.  *State v. Bird*, 81 Ohio St.3d 582, 584, 692 N.E.2d 1013 (1998).  At the plea hearing, the state alleged that defendant owned or possessed these items and used them in the commission of felony drug trafficking.

{¶29}     On appeal, under assignments of error two and three, defendant cites no legal authority to support his arguments.   Taking into consideration our finding that the entry into and search of defendant's home was proper, we find no legal basis supporting defendant's arguments regarding property seized and/or forfeited.     Accordingly, defendant's second and third assignments of error are overruled.

{¶30}     Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


JAMES J. SWEENEY, JUDGE

MELODY J. STEWART, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR