[Cite as *State v. Engle*, 2013-Ohio-1818.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

JUSTIN J. ENGLE

      Defendant-Appellant

Appellate Case No.    25226

Trial Court Case No.   2011-CR-2985

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of May, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JOSEPH R. HABBYSHAW, Atty. Reg. #0089530, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

CANDI S. RAMBO, Atty. Reg. No. 0076627, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}     Defendant-Appellant, Justin Engle, appeals from his criminal conviction and sentence to community control sanctions following a plea of no contest to one count of possessing cocaine.   Engle contends that the trial court erred by overruling his motion to suppress evidence that he claims was obtained during an illegal seizure of his person and during a custodial interrogation absent *Miranda* warnings.

{¶ 2}     We conclude that Engle was lawfully seized pursuant to an investigatory detention and pursuant to his need for emergency aid.   We also conclude that the absence of *Miranda* warnings does not warrant suppression of the evidence because Engle was not subjected to a custodial interrogation.   Accordingly, the judgment of the trial court will be affirmed.

## I.   Facts & Course of Proceedings

{¶ 3}     On August 28, 2011, at approximately 1:30 a.m., Officer Zacharia Hastings of the Dayton Police Department was dispatched to McClain and Drummer streets on a report that shots had been fired.   Shortly thereafter, Hastings received a separate dispatch reporting a fight in the same area.   While driving westbound on McClain Street, Hastings was looking for signs of disturbance when he saw Justin Engle walking towards him on the sidewalk.   Hastings immediately noticed that Engle's head was bleeding and that he was staggering slightly. Hastings could see blood running down the side of Engle's face.

{¶ 4}     Hastings thought that Engle may have been involved in the incident(s) that prompted the earlier dispatches, and he was concerned about Engle's physical condition.   As a result, Hastings stopped his cruiser and approached Engle to assess his head injury and to investigate the cause of the injury. Engle immediately stopped when he was approached by Hastings.   Officer Hastings did not either draw his gun or block Engle's path.   He asked Engle

what caused his head injury, and Engle said, "he just wanted to go home." Hearing Transcript (Feb. 2, 2012), p. 9, ln. 2. At that point in time, Hastings was not certain whether Engle was a suspect or a victim, but believed that he had been in a fight and needed medical attention.

{¶ 5} In order to investigate the matter further, Hastings walked Engle over to his cruiser. Hastings testified that at this point in time, Engle was neither in custody nor under arrest, and that Engle never asked to leave. However, as they were walking, Engle said again that "he just wanted to go home." *Id*. at p. 9, ln. 7. Hastings told Engle to have a seat in the police cruiser while he investigated the situation.

{¶ 6} Before having Engle sit in the cruiser, Hastings asked Engle "if he had anything on him." *Id*. at p. 9, ln. 10-11. Hastings testified that he asked this question for purposes of officer safety. In response, Engle said that "he had a bag of weed in his pocket." *Id*. at p. 9, ln. 13. Engle then reached into his right pocket, pulled out a bag of marijuana, and handed it to Hastings. The officer asked Engle if he had anything else, and Engle responded, "Yeah, I have a bag of cocaine." *Id*. at p. 12, ln. 12-13. Engle then reached into his left pocket, pulled out a sandwich bag containing cocaine, and handed it to Hastings. At that point in time, Hastings decided to arrest Engle for possession of drugs. While handcuffing Engle, Hastings noticed Engle trying to kick another bag under the cruiser. Hastings recovered the third bag, and the substance inside was field-tested and found to be cocaine.

{¶ 7} After Engle's arrest, Hastings did not question Engle about the drugs and did not advise him of his *Miranda* rights. The officer took Engle to Grandview Hospital for medical treatment, and Engle volunteered some incriminating statements concerning how he obtained the drugs. These statements were not in response to any officer questioning. After Engle received

medical treatment for his head injury, Hastings took him to jail.

{¶ 8} On November 23, 2011, Engle was indicted on one count of having violated R.C. 2925.11(A) by possessing cocaine, a felony of the fourth degree. On December 27, 2011, Engle filed a motion to suppress evidence on grounds that the evidence was obtained during an illegal search and seizure and absent *Miranda* warnings. A hearing on the motion was held on February 2, 2012. The trial court found that Engle's encounter with Hastings did not qualify as a seizure requiring Fourth Amendment scrutiny. It also found that the encounter did not implicate *Miranda*. The trial court therefore overruled Engle's motion to suppress. As a result of the trial court's decision, Engle pleaded no contest to the possession of cocaine charge. The trial court found Engle guilty and sentenced him to community control sanctions.

{¶ 9} Engle appeals the trial court's decision overruling his motion to suppress.

**II. Did the Trial Court Did Err in Overruling the Appellant's Motion to Suppress?**

{¶ 10} Engle's sole Assignment of Error states that:

The trial court erred in overruling Appellant's Motion to Suppress.

{¶ 11} Under this assignment of error, Engle contends that the trial court incorrectly found that he was not seized within the meaning of the Fourth Amendment. Engle claims that he was seized by Officer Hastings, and that the seizure was unlawful because it was conducted without a reasonable articulable suspicion of criminal activity. Engle argues that the evidence against him in this case was discovered as result of the illegal seizure, and is therefore subject to suppression under the fruit of the poisonous tree doctrine. Additionally, the Appellant argues that the evidence should be suppressed on grounds that it was obtained during a custodial interrogation in the absence of *Miranda* warnings.

{¶ 12}　　Generally, when reviewing a decision regarding a motion to suppress "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*. citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997).

{¶ 13}　　We find that the trial court's findings of facts are supported by competent, credible evidence, and hereby approve and adopt them as our own. Using these facts, we must determine whether Engle was seized by Hastings, and if so, whether the seizure was lawful. We must also determine whether the officer's failure to recite *Miranda* warnings requires suppression of the evidence.

## A.　Was there a Seizure?

{¶ 14}　　According to *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980):

> [A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's

request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to

a seizure of that person. (Citations and footnote omitted.) *Id*. at 554-555.

**{¶ 15}** In this case, the trial court weighed the factors in *Mendenhall* and found no facts suggesting that Engle was not free to leave. We disagree with this finding. While the record establishes that Engle never attempted to leave the officer's presence, it does indicate that Engle told the officer twice that he wanted to go home. Instead of letting him go home, the officer told Engle to have a seat in his cruiser while he investigated the situation. The record also indicates that the officer "made it clear" to Engle that he was "not free to go home." Hearing Transcript (Feb. 2, 2012), p. 10, ln. 5; p. 20, ln. 25; p. 21, ln.1. Accordingly, a reasonable person in Engle's position would not have felt free to leave the officer's presence. As a result, Engle was seized within the meaning of the Fourth Amendment.

## B.  Was the Seizure Lawful?

**{¶ 16}** A seizure "implicates the Fourth Amendment protections and requires legal justification." *State v. Belcher*, 2d Dist. Montgomery No. 24385, 2011-Ohio-5015, ¶ 21, citing *Mendenhall*; *State v. Gonsior*, 117 Ohio App.3d 481, 690 N.E.2d 1293 (2d Dist. 1996). Under the Fourth Amendment, a warrant based on probable cause is required to effectuate a lawful search and seizure unless one of the recognized exceptions applies. *State v. Holloway*, 2d Dist. Clark No. 04CA0070, 2006-Ohio-4797, ¶ 15-16, citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "One of those exceptions is the rule regarding investigative stops, announced in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, which

provides that a police officer may stop an individual to investigate unusual behavior, even absent a prior judicial warrant or probable cause to arrest, where the officer has a reasonable, articulable suspicion that specific criminal activity may be afoot." *Gonsior* at 486. Another exception is the community-caretaking/emergency-aid exception which "allows police officers to stop a person to render aid if they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious injury." *State v. Dunn*, 131 Ohio St. 3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 22.

{¶ 17}  Both the investigative stop and community-caretaking/emergency aid exceptions to the Fourth Amendment warrant requirement apply to this case and render Engle's seizure lawful.

### 1. Investigative Stop Exception

{¶ 18}  A police officer may conduct an investigative stop if the officer has "a reasonable, articulable suspicion that specific criminal activity may be afoot." *Gonsior* at 486, citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Gonsior* this district stated:

> [J]ustification for a particular seizure must be based upon specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant that intrusion. The facts must be judged against an objective standard: whether the facts available to the officer at the moment of seizure or search would warrant a person of reasonable caution in the belief that the action taken was appropriate.
>
> Whether an investigative stop is reasonable must be determined from the

totality of the circumstances that surround it. The totality of the circumstances are "to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." (Citations omitted.) *Gonsior,* 117 Ohio App.3d at 486, 690 N.E.2d 1293.

{¶ 19} In this case, the record establishes that Officer Hastings conducted an investigatory detention of Engle for purposes of investigating his medical condition and the altercation that led to his injury. The officer found Engle staggering on the sidewalk with blood on his head in the same location where he had been dispatched for reports of shots being fired and fighting. The investigatory detention was justified by a reasonable articulable suspicion of criminal activity because, under the totality of the circumstances, a reasonably prudent police officer would have believed that Engle was either a victim or a suspect of criminal activity related to the earlier reports. Accordingly, it was objectively reasonable and appropriate for the officer to detain Engle so that he could continue to investigate the matter. Therefore, Engle was lawfully seized under the investigatory stop exception to the Fourth Amendment warrant requirement.

### 2. Community-Caretaking/Emergency-Aid Exception

{¶ 20} "[C]ourts recognize that a community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement is necessary to allow police to respond to emergency situations where life or limb is in jeopardy." *Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, at ¶ 21. This exception "allows police officers to stop a person to render aid if they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious injury." *Id.* at ¶ 22. "In reviewing whether exigent circumstances were present,

we consider the 'totality of the circumstances and the inherent necessities of the situation at the time.' " *Ziegler v. Aukerman*, 512 F.3d 777, 785 (6th Cir. 2008), quoting *United States v. Rohrig*, 98 F.3d 1506, 1511 (6th Cir.1996) (citation and quotation marks omitted sic). In *Dunn*, the Supreme Court of Ohio mentioned an example of a circumstance justifying emergency aid in *Goldsmith v. Snohomish Cty.*, 558 F.Supp.2d 1140 (W.D. Wash 2008). In *Goldsmith*, "the court held that the community-caretaking exception to the warrant requirement applied to officers' temporary arrest of a violent injured man for the sole purpose of enabling paramedics to render necessary medical aid." *Dunn* at ¶ 21.

{¶ 21}   Similar to *Goldsmith*, Officer Hastings detained Engle to determine whether he required medical assistance and to prevent further injury. Under the totality of the circumstances, the officer reasonably believed that there was an immediate need to stop and assist Engle because he was bleeding from his head and staggering. It was also reasonable for the officer to detain Engle to evaluate his head injury and to determine whether he needed immediate medical attention to protect his life and prevent further injury. Accordingly, Engle's seizure was lawful pursuant to the community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement.

### C.   Does the Absence of Miranda Warnings Require Suppression of the Evidence?

{¶ 22}   Engle is attempting to suppress evidence of the cocaine and his incriminating statements by arguing that the evidence was discovered in contravention of his Fifth Amendment rights as enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Engle argues that because Officer Hastings never read him his *Miranda* warnings, his Fifth

Amendment rights were violated, and as a result all evidence produced at the time of the violation should be suppressed under the fruit of the poisonous tree doctrine. Specifically, Engle argues that *Miranda* warnings were required because he was in custody and undergoing interrogation when the officer asked if he had anything on him.

{¶ 23} "The right to *Miranda* warnings is grounded in the Fifth Amendment's prohibition against compelled self-incrimination. * * * It is well established, however, that the police are not required to administer *Miranda* warnings to every individual they question." *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 16 (2d Dist.), citing *Moran v. Burbine*, 475 U.S. 412, 420, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *State v. Biros*, 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997).

> The warnings set forth in *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, are required only when a suspect is subjected to custodial interrogation. The United States Supreme Court defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Accordingly, police are not required to administer *Miranda* warnings to every individual they question. (Citations omitted.) (Emphasis added.) *State v. Martin*, 2d Dist. Montgomery No. 19186, 2002 WL 1042066, *3 (May 24, 2002).

{¶ 24} Additionally, the Supreme Court of Ohio explained in *Biros* that "[t]he determination whether a custodial interrogation has occurred requires an inquiry into 'how a reasonable man in the suspect's position would have understood his situation.' '[T]he ultimate

inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with *a formal arrest.* ' " (Citations omitted.)   *Id.* at 440.

{¶ 25}    In *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed. 2d 317 (1984), the United States Supreme Court   rejected the contention that an initial stop of a car, by itself, rendered a motorist in custody.   *Id.* at 441.   The court also determined that when an officer asks a modest number of questions during a traffic stop and asks a motorist to perform a balancing test in a location that is visible to the public, the motorist is not in custody for purposes of *Miranda*.   *Id*. at 442.   The court in *Berkemer* stated:

> [Q]uestioning incident to an ordinary traffic stop is quite different from stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek.
>
> * * *
>
> In short, the atmosphere surrounding an ordinary traffic stop is substantially less "police dominated" than that surrounding the kinds of interrogation at issue in *Miranda* itself, and in the subsequent cases in which we have applied *Miranda*. (Citations and footnotes omitted.) *Id.* at 438-439.

{¶ 26}    Likewise, in *State v. Barnett,* 2d Dist. Montgomery No. 14019, 1994 WL 567551 (Aug. 31, 1994) this district stated:

> General, on-the-scene questioning of persons concerning events that have happened does not ordinarily fall within the ambit of custodial interrogation, because the compelling atmosphere inherent in the process of in-custody

interrogation is not present. Similarly, the roadside questioning of a motorist detained pursuant to a routine traffic stop does not ordinarily constitute custodial interrogation for purposes of *Miranda*. Simply asking the motorist in that circumstance to sit in the rear of the police cruiser for a short period of time while answering a few questions or while a citation is issued does not convert the ordinary traffic stop into custodial interrogation. (Citations omitted.) *Id*. at \*4.

{¶ 27} In this case, we have already determined that Officer Hastings was conducting an investigatory detention, not a custodial interrogation. Engle's detention is therefore more akin to the traffic stop scenario discussed in *Berkemer*. As in *Berkemer*, the atmosphere surrounding Engle's detainment was substantially less police-dominated than it would have been during a formal arrest. For example, before Engle handed over the drugs, Officer Hastings did not say or do anything to make Engle believe that he was under arrest, and Engle's movement was not restrained in a way that could be associated with a formal arrest. Accordingly, a reasonable person in Engle's position would not have believed he was under arrest at the time the officer instructed him to sit in his vehicle. Furthermore, as discussed in *Barnett*, instructing an individual to sit in a police cruiser does not convert the traffic stop into a custodial interrogation. Many courts have found that this instruction is permissible for purposes of officer safety. *See, e.g., State v. Taylor*, 5th Dist. No. 1997CA00321, 1998 WL 429917, \*3 (July 13, 1998), citing *United States v. Manbeck*, 744 F.2d 360, 377-378 (4th Cir. 1984); *State v. Mertz*, 362 N.W.2d 410, 413 (N.D. 1985).

{¶ 28} Additionally, in *State v. Martin*, 2d Dist. Montgomery No. 19186, 2002 WL 1042066 (May 24, 2002), this district found there was no custodial interrogation when a police

officer asked a defendant if she had any weapons during an investigatory detention. *Id.* at *5. The officer in *Martin* instructed the defendant to sit in his cruiser while he wrote her a ticket for jaywalking. *Id.* at *1. She was not under arrest, but before the officer let her inside his vehicle, he asked whether she had any "weapons, crack pipes, needles, or drugs." *Id.* This district found that the officer's inquiry "did not convert an investigative stop into a formal arrest or a restraint on [defendant's] freedom of the degree commonly associated with an arrest." *Id. at * 5.* "Accordingly, [the officer] was not required to comply with the requirements of *Miranda* before asking questions of [the defendant]." *Id.*

{¶ 29} The present case is analogous to *Martin.* Like the defendant in *Martin*, Engle was not under arrest when Officer Hastings asked if he had anything on him. Also like *Martin*, Officer Hastings asked this question for purposes of officer safety. Furthermore, at the time they asked the question, both officers were performing lawful investigatory detentions. The law is clear that *Miranda* warnings are not required during investigatory detentions. Therefore, Officer Hastings was not required to recite *Miranda* warnings prior to asking Engle if he had anything on him. *Miranda* warnings were also not required after Engle was arrested, because the record indicates that Officer Hastings did not ask Engle any questions while he was in custody. Accordingly, the absence of *Miranda* warnings does not necessitate the suppression of the evidence in this case.

{¶ 30} Because Engle was lawfully seized, and because he was not subject to a custodial interrogation requiring *Miranda* warnings, the evidence in this case was not procured through unlawful police conduct and should not be suppressed under the fruit of the poisonous tree doctrine.

**{¶ 31}** Engle's sole Assignment of Error is overruled.

### III. Conclusion

**{¶ 32}** Having overruled Engle's sole Assignment of Error, we hereby affirm the trial court's judgment overruling Engle's motion to suppress.

. . . . . . . . . . . .

HALL, J.,   concurs.

FROELICH, J., concurring in judgment:

**{¶ 33}** I concur separately only to express concern about the emergency aid exception discussed by the majority.  The *Dunn* case involved an individual who was reported to be operating a truck while armed with a pistol and who intended to kill himself; other cases cited by the Supreme Court include the "temporary arrest" of a violent, injured person, a defendant who was "going crazy," or an officer's reasonable belief that action was necessary to "investigate an emergency threatening life and limb."

**{¶ 34}** Here, Engle was slightly staggering as he walked on the sidewalk, his head was bleeding, and there was blood running down the side of his face.  The officer acted reasonably and responsibly by approaching Engle, talking with him, and assessing the situation.  There is nothing in this record that Engle's injuries posed a risk of harm to himself or others.  In fact, Engle stopped when he saw the officer, responded appropriately to any questions, and said on two separate occasions that he "just wanted to go home."   At that point, if that were all the facts in the record, it was his right to be left alone and "just to go home."

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Joseph R. Habbyshaw
Candi S. Rambo
Hon. Steven K. Dankof