Lundberg Stratton, J.
{¶ 1} Today this court must decide whether the community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows the police to stop a driver based on a dispatch that the driver is armed and plans to kill himself. Because we answer in the affirmative, we reverse the judgment of the court of appeals.
*326 I. Facts and Procedural History
{¶ 2} On March 27, 2008, Vandalia Police Officer Robert Brazel received a dispatch that there was a suicidal male driving a tow truck and that he was planning to kill himself when he arrived at 114 Helke Road in Vandalia. The dispatcher gave the name of the driver, Richard Dunn, defendant-appellee, and indicated that he had a weapon. The dispatcher also noted that the vehicle was a “big rig” tow truck displaying the name Sandy’s towing company.
{¶ 3} Officer Brazel was familiar with the Helke Road address because he had seen a tow truck parked in front of the residence several times during his patrol route. Less than two minutes after he heard the dispatch, Brazel saw the tow truck, and it was approximately two miles from the Helke address. Brazel followed it until another officer arrived to assist him, and then the two officers signaled for Dunn to pull over.
{¶ 4} After stopping the truck, Dunn, who was crying, got out of the vehicle and put his hands up. The officers saw that Dunn was holding a cell phone, but they did not see any weapon. Because they were dealing with an allegedly suicidal person, they handcuffed Dunn for their safety and his. The officers did not find any weapons on Dunn other than a small pocketknife. Dunn was placed in Brazel’s cruiser.
{¶ 5} Brazel testified that as he was walking Dunn to his police cruiser, Dunn stated: “[I]t’s in the glove box.” Brazel asked him if he was referring to a gun, and Dunn said yes. The other officer checked the glove compartment and found a loaded gun.
{¶ 6} After the weapon was secured, Brazel spoke with Dunn about the events leading up to the stop. Dunn told the officer that the week before, he had had problems with his soon-to-be ex-wife and had been taken to a hospital for a mental-health evaluation. Dunn informed the officer that he had intended to shoot himself when he got to the place where he was to drop off the semi that he was towing. Brazel explained to Dunn that he could be involuntary committed or he could go to the hospital voluntarily. Ultimately, Brazel drove Dunn to the hospital in his patrol car.
{¶ 7} On August 10, 2009, Dunn was indicted on one count of improper handling of a firearm in a motor vehicle, R.C. 2923.16(B). On October 2, 2009, Dunn filed a motion to suppress, contending that the traffic stop violated the Fourth Amendment and that the officers had improperly interrogated him without informing him of his Miranda rights. Therefore, Dunn asked that all evidence resulting from the stop and his statements be suppressed, including the gun found in the glove compartment. Brazel was the only witness called at the suppression hearing, and the testimony focused on the facts surrounding the stop. Brazel testified that he had not observed Dunn commit any traffic violations or *327 violations of any other laws while he followed him, and he admitted that the officers had not provided Dunn with Miranda warnings.
{¶ 8} The trial court overruled the motion to suppress, holding that the stop was a “ ‘legitimate response to an emergency situation,’ ” quoting State v. Stubbs, 2d Dist. No. CA 16907, 1998 WL 677510, *3 (Oct. 2, 1998), and was therefore not an unreasonable seizure under the Fourth Amendment. The court also held that Dunn’s statements and the evidence obtained from them should not be suppressed, because the police officers had not engaged in custodial interrogation but rather, Dunn’s statements were spontaneous and unsolicited.
{¶ 9} On December 30, 2009, the court held a change-of-plea hearing at which Dunn pleaded no contest to the single count in the indictment. Dunn was sentenced to five years of supervised probation and was ordered to attend counseling and pay court costs. The Court of Appeals for Montgomery County reversed the judgment of the trial court, vacated the conviction, deemed Dunn’s plea of no contest withdrawn, and granted the motion to suppress.
{¶ 10} The case is now before this court upon our acceptance of the state’s discretionary appeal. State v. Dunn, 128 Ohio St.3d 1458, 2011-Ohio-1829, 945 N.E.2d 522.
II. Analysis
{¶ 11} We begin by noting the irony that Dunn, who was suicidal when he was stopped by the police, now contends that the police should not have stopped his vehicle to render aid. If the police had not stopped Dunn, he may have harmed himself. And if the police had not acted and Dunn had harmed or killed himself, Dunn or his estate could have filed a civil lawsuit against the police for failure to respond to an emergency. Such is the balancing act of Fourth Amendment law.
{¶ 12} In analyzing the validity of the stop, the court of appeals relied on Maumee v. Weisner, 87 Ohio St.3d 295, 720 N.E.2d 507 (1999), and held that the state had not demonstrated that the dispatcher had a reasonable basis for issuing the dispatch that caused the officers to stop Dunn’s truck. The court of appeals appears to have determined that the officers were not authorized to stop Dunn unless there was evidence from which the dispatcher could have concluded that the information supplied to him or her had sufficient indicia of reliability. This was not the proper analysis to employ. As noted by the dissenting judge below, the evidentiary requirement that Weisner imposes on the state in a suppression hearing applies only to an “investigative stop” authorized by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which entails seizure of a person to investigate a reasonable suspicion of criminal activity. Since this was not a Terry stop, the court of appeals erred in using this analysis.

*328
A. Fourth Amendment

{¶ 13} The Fourth Amendment to the United States Constitution provides:
{¶ 14} “The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
{¶ 15} There are a number of exceptions to the Fourth Amendment warrant requirement, including the one applicable to this case, the community-caretaking exception, which courts sometimes refer to as the “emergency-aid exception” or “exigent-circumstance exception.”
{¶ 16} The community-caretaking exception was first addressed by the United States Supreme Court in Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Dombrowski, an off-duty Chicago police officer, was arrested by police in Wisconsin on a charge of drunk driving following a one-car accident in which Dombrowski’s rental car was heavily damaged. Id. at 435-436. The car was towed from the scene to a privately owned garage, and a few hours later, one of the arresting officers searched Dombrowski’s vehicle without a warrant, looking for his service revolver, which the officer believed to be in his vehicle. Id. at 436-437. In the trunk of Dombrowski’s vehicle, the officer found evidence linking him to a murder, a crime for which he was eventually convicted. Id. at 437, 439. Ultimately, the court concluded that because the trunk of the vehicle was vulnerable to intrusion by vandals and the officer reasonably believed that the trunk contained a gun, the search was not unreasonable within the meaning of the Fourth Amendment. Id. at 448.
{¶ 17} The court explained that local law-enforcement officers “frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.” Id. at 441. As the court noted in Dombrowski, “[t]he ultimate standard set forth in the Fourth Amendment is reasonableness.” Id. at 439. Thus, the Fourth Amendment protects citizens from only unreasonable government searches and seizures. United States v. Sharpe, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
{¶ 18} The United States Supreme Court further elaborated on the communitycaretaking exception to the Fourth Amendment warrant requirement in Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). “We do not *329 question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.” Id. at 392. “The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.” Wayne v. United States, 318 F.2d 205, 212 (D.C.Cir.1963).
{¶ 19} The Supreme Court has also referred to this exception as the “emergency-aid exception.” For example, in Michigan v. Fisher, — U.S. —, 130 S.Ct. 546, 175 L.Ed.2d 410 (2009), the court upheld an officer’s warrantless entry into the defendant’s residence as reasonable when the police officers who were responding to a call regarding a disturbance observed a tumultuous situation when they arrived at the home, including blood on a damaged vehicle parked in the driveway and witnesses reporting that the defendant was “going crazy” inside. Id. at —, 130 S.Ct. at 547. The Fisher court noted that “[officers do not need ironclad proof of ‘a likely serious, life-threatening’ injury to invoke the emergency aid exception.” Id. at —, 130 S.Ct. at 549. Rather, “[a]n action is ‘reasonable’ under the Fourth amendment, regardless of the individual officer’s state of mind, ‘as long as the circumstances, viewed objectively, justify [the] action.’ ” (Emphasis added in Stuart.) Brigham City v. Stuart, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), quoting Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).
{¶ 20} Because police officers are duty-bound to provide emergency services to those who are in danger of physical harm, I American Bar Assn. Standards for Criminal Justice, Section 1-2.2 at 1-31 (2d Ed.1980), courts must frequently consider the reasonableness of an officer’s actions in situations, such as the one at bar, where a person’s life is in jeopardy. In State v. Applegate, 68 Ohio St.3d 348, 626 N.E.2d 942 (1994), this court upheld a warrantless entry into a residence by police officers who, while responding to a report of domestic violence, heard sounds coming from inside the residence indicative of violence. Although we did not use the term “community caretaking,” but rather “exigent circumstances,” we held that the warrantless entry was certainly justified by the officers’ reasonable belief that entering the residence was necessary to investigate an emergency threatening life and limb. Id. at 349-350. In so holding, the court noted: “ ‘[T]he business of policemen and firemen is to act, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation of the judicial process.’ ” (Emphasis added in Applegate.) Applegate at 350, quoting Wayne, 318 F.2d at 212.
*330 {¶ 21} Thus, courts recognize that a community-caretaking/emergeney-aid exception to the Fourth Amendment warrant requirement is necessary to allow police to respond to emergency situations where life or limb is in jeopardy. For example, in Turner v. State, 645 So.2d 444 (Fla.1994), the Florida Supreme Court upheld officers’ warrantless entry into a motel room when the defendant had opened the door after the officers knocked, walked from the door to a bed, leaving the door ajar, and pulled out a gun and pointed it at his head. Id. at 447. Further, in Seibert v. State, 923 So.2d 460, 470-471 (Fla.2006), the Florida Supreme Court held that the warrantless entry and search of an apartment in response to a call indicating that a person in the apartment had threatened to kill himself was lawful because of exigent circumstances indicating the need for help. And the Eighth Circuit Court of Appeals upheld a warrantless entry into a man’s bedroom when his wife reported to the police that he was suicidal and had locked himself in the bedroom with a gun. United States v. Uscanga-Ramirez, 475 F.3d 1024 (8th Cir.2007). Finally, in Goldsmith v. Snohomish Cty., 558 F.Supp.2d 1140, 1152 (W.D.Wash.2008), the court held that the community-caretaking exception to the warrant requirement applied to officers’ temporary arrest of a violent injured man for the sole purpose of enabling paramedics to render necessary medical aid. See also Ziegler v. Aukerman, 512 F.3d 777, 785-786 (6th Cir.2008); State v. Oliver, 91 Ohio App.3d 607, 610, 632 N.E.2d 1382 (9th Dist.1993).
{¶ 22} Thus, we hold that the community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows police officers to stop a person to render aid if they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious injury.
{¶ 23} In this case, officers received a dispatch regarding an allegedly armed and suicidal person with an imminent plan to kill himself upon reaching a certain destination. Given that stopping a person on the street is “considerably less intrusive than police entry into the home itself,” Illinois v. McArthur, 531 U.S. 326, 336, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), the officers’ effecting a traffic stop to prevent Dunn from harming himself was reasonable under the Fourth Amendment. Thus, the community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows police officers to stop a driver based on a dispatch that the driver is armed and plans to kill himself.

B. Voluntary Statement

{¶ 24} As the trial court below held, the requirement that police officers administer Miranda warnings applies only when a suspect is subjected to both custody and interrogation. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Here, Dunn emerged from the vehicle on his own accord and almost immediately stated that a gun was in the glove compartment. An *331 unsolicited and spontaneous statement such as the one made by Dunn in this case is not the product of an interrogation, so Miranda does not apply. See Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
III. Conclusion
{¶ 25} As Chief Justice Warren Burger once said, “ ‘ “[t]he policeman on the beat, or in the patrol car, makes more decisions and exercises broader discretion affecting the daily lives of people, every day and to a greater extent, in many respects, than a judge will ordinarily exercise in a week * * ’ ” Excerpted from an FBI Academy graduation address by then Chief Justice of the United States Supreme Court Warren E. Burger. Dimino, Police Paternalism: Community Caretaking, Assistance Searches, and Fourth Amendment Reasonableness, 66 Wash. & Lee L.Rev. 1485, 1527 (2009), quoting Abadinsky, Discretionary Justice 15 (1984), quoting Carlton, A Crime Agenda for North Carolina 26-27 (1978).
{¶ 26} The community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows a law-enforcement officer with objectively reasonable grounds to believe that there is an immediate need for his or her assistance to protect life or prevent serious injury to effect a communitycaretaking/emergency-aid stop. Thus, the officers in this case were authorized to stop Dunn based on the dispatch that Dunn was armed and planned to kill himself. Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.
Judgment reversed.
O’Connor, C.J., and O’Donnell, Lanzinger, Cupp, and McGee Brown, JJ., concur.
Pfeifer, J., dissents.