[Cite as *State v. Hendrix*, 2014-Ohio-3577.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellant

    v.

ANDRE D. HENDRIX
DELISHA R. SCOTT

    Appellees

C.A. No.     27217

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2011 12 3384 (A)(B)

DECISION AND JOURNAL ENTRY

Dated: August 20, 2014

BELFANCE, Presiding Judge.

{¶1} Plaintiff-Appellant the State of Ohio appeals from the judgment of the Summit County Court of Common Pleas granting Defendants-Appellees Andre Hendrix' and Delisha Scott's motion to suppress. For the reasons set forth below, we affirm.

I.

{¶2} On October 31, 2011, at approximately 10:30 a.m., a neighbor called police to report that a garage door of a house on Suffolk Downs in Stow, Ohio had been standing open for several days and that that was unusual. When police arrived on the scene, the officers did not speak with any neighbors and did not notice any signs of a possible break in. Officers noted nothing else unusual about the home or property. While there had been approximately 8-10 daytime burglaries in the City of Stow in the three months prior, there had been none in the Suffolk Downs neighborhood. Ultimately, police entered the home and found marijuana growing in a room in the upstairs of the house.

{¶3} Both Mr. Hendrix and Ms. Scott were charged in relation to the marijuana grow. Mr. Hendrix and Ms. Scott were indicted on one count of possession of marijuana, one count of illegal cultivation of marijuana, one count of trafficking in marijuana, and one count of possessing criminal tools. In addition, Mr. Hendrix was charged with one count of having weapons under disability.

{¶4} Mr. Hendrix filed a motion to suppress, and Ms. Scott was allowed to join in the motion. After holding a hearing, the trial court granted the motion to suppress. The State appealed, and this Court reversed the judgment of the trial court, concluding that, because the trial court's factual findings contained several inconsistencies, the evidence did not support the trial court's findings. *See State v. Hendrix,* 9th Dist. Summit Nos. 26648, 26649, 2013-Ohio-2430, ¶ 14-15. Upon remand, the trial court issued a revised entry and again granted the motion to suppress. The State has appealed, raising a single assignment of error for our review.

II.

THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS' MOTION TO SUPPRESS.

{¶5} In its sole assignment of error, the State asserts that the trial court erred in granting the motion to suppress because the police's warrantless entry into the home on Suffolk Downs was authorized under the emergency aid exception. We do not agree.

{¶6} Generally, review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Thus, we defer to the trial court's findings of fact if they are supported by competent, credible evidence and review its application of the law to the facts de novo. *State v. Metcalf*, 9th Dist. Summit No. 23600, 2007-Ohio-4001, ¶ 6.

The Fourth Amendment to the U.S. Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. "A warrantless entry into a home to make a search or arrest is *per se* unreasonable, and the burden of persuasion is on the state to show the validity of the search." (Emphasis sic.) *State v. Nields,* 93 Ohio St.3d 6, 15 (2001); *see also Brigham City v. Stuart,* 547 U.S. 398, 403 (2006), quoting *Groh v. Ramirez,* 540 U.S. 551, 559, (2004) ("It is a basic principle of Fourth Amendment law, that searches and seizures inside a home without a warrant are presumptively unreasonable.") (Internal quotations and citations omitted.); *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984), quoting *United States v. United States District Court,* 407 U.S. 297, 313 (1972) ("It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'") Thus, "[b]efore agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh* at 750.

{¶7} "Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Stuart* at 403. Thus, "[w]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Id*. quoting *Mincey v. Arizona,* 437 U.S. 385, 393-394 (1978). "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Stuart* at 403. Under such circumstances, "'[t]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.'" *Nields* at 15*,* quoting *Mincey* at 392. "The need to protect or preserve life or avoid serious

injury is justification for what would be otherwise illegal absent an exigency or emergency." (Internal quotations and citation omitted.) *State v. Dunn,* 131 Ohio St.3d 325, 2012-Ohio-1008, ¶ 18. Under this exigency, referred to as the "emergency-aid exception," "[o]fficers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." (Internal quotations and citations omitted.) *Id.* at ¶ 19. However, the presumption of unreasonableness may only be overcome when the exigencies of the situation are so compelling that a warrantless entry into the home is objectively reasonable. *See Mincey* at 394; *Welsh* at 749-750 (noting that "police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests[]"). As such, the "decision to enter must be based on more than a hunch or the mere possibility that someone inside needs immediate aid." (Internal quotations and citation omitted.) *Nelms v. Wellington Way Apts., LLC,* 513 Fed.Appx. 541, 545 (6th Cir.2013).

{¶8} "[A]n action is reasonable under the Fourth amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify [the] action." (Internal quotations, citations, and emphasis omitted.) *Dunn* at ¶ 19; *Michigan v. Fisher,* 558 U.S. 45, 49 (2009). In addition, assuming that the state has met its burden of demonstrating that the exigencies of the situation overcome the presumption of unreasonableness with respect to a warrantless home entry, the "warrantless search must be strictly circumscribed by the exigencies which justify its initiation." (Internal quotations and citation omitted.) *State v. Applegate,* 68 Ohio St.3d 348, 350 (1994).

{¶9} Officers David Hall and David Semonin of the Stow Police Department responded to a call for service around 10:30 a.m. on October 31, 2011. Officer Hall testified that a neighbor called in to report that "the garage door next door was standing open and that was

unusual." Office Semonin also indicated that the caller stated that no one had been seen at the house. At the time of the call, police only knew that a neighbor had called in but did not know which neighbor, although it appears that the caller gave both his or her address and name to dispatch. Officer Semonin testified that the concern based upon the call was that someone inside was in need of help or that there had been a burglary. Officer Hall stated that there had been 8-10 daytime burglaries in the City of Stow in the last three months; however, he did not think any had been in the neighborhood where the house at issue was located.

{¶10} When Officers Hall and Semonin arrived on the scene they saw the garage door of the attached garage standing open and no car inside. Officer Hall noticed nothing else unusual about the garage. Officer Hall testified that they went to try to contact the neighbors but did not reach anyone. They then went back to the house and tried to look in the windows and to check the exterior for evidence of a break in. Officers did not find anything other than the garage door being open and could not really see anything in the house because of the presence of blinds and curtains. Officer Semonin indicated that he talked to the mail carrier who indicated that "the mail had not been picked up from the day before and that there had been other occasions where the mail wasn't picked up every day * * *."

{¶11} Officers then entered the house through the closed but unlocked man door in the garage. The officers announced themselves and proceeded through the house with their weapons drawn. As the officers were checking the rooms upstairs, they noticed that, behind one of the closed doors, there was a bright light coming from the room and they could hear the sound of a fan. Officer Hall testified that he was concerned there could be a person in the room with the light on who might need assistance. The officers first checked the rooms that were open and then looked in the closed room. Inside that room was a marijuana grow operation.

{¶12} We cannot conclude that the trial court erred in granting the motion to suppress. We appreciate that the officers had a concern that it was *possible* there was someone in need of assistance in the house or that there had been a burglary, but we cannot say that the circumstances, when viewed objectively, would lead one to reasonably believe that anyone in the house was in immediate need of aid. *See Nields,* 93 Ohio St.3d at 15; *Dunn,* 131 Ohio St.3d 325, 2012-Ohio-1008, at ¶ 19. At the time of the call, police did not know which neighbor had called to report the open garage door and were unable to talk with the neighbors upon arriving at the house and seeing the garage door open. Thus, the police could only confirm that the garage door was indeed open; the officers were unable to confirm how long it had been open. Moreover, the information Officer Semonin received from the mail carrier did not provide support for the conclusion that an emergency situation existed or that the residents had been absent or missing for a significant period of time. The mail carrier indicated that the mail had not been picked up from the day before; however, the mail carrier also stated that such behavior was not necessarily out of the ordinary. Finally, the officers did not notice any signs of a break in or other emergency when walking around the house. *See State v. Hallam,* 2d Dist. Clark No. 2012 CA 19, 2012-Ohio-5793, ¶ 20 (noting that, "[w]hen police reasonably believe that a burglary is in progress or has occurred at a particular structure, an immediate warrantless entry undertaken to investigate and protect that property and assist any victims inside who may be in danger or in need of immediate aid has been upheld by the courts as a reasonable search[]") (Internal quotations and citations omitted.); *see also id.* at ¶ 22 (finding there was a reasonable belief a burglary was in progress when officer who was sent to conduct welfare check encountered several vehicles present but no lights on in the residence, no answer upon knocking, an open garage door, broken garage window, and ajar front door). And while there had been daytime

burglaries in the City of Stow, Officer Hall did not think any of them had been in the neighborhood of the house with the open garage door.

{¶13} We share the officers' concern for the safety of area citizens, but those concerns must rise to the level of a reasonable belief that someone in the residence is in need of immediate aid, *see Nields* at 15, in order to justify a warrantless intrusion into a private residence. Given the record before us, we cannot say that the trial court erred in concluding that the emergency aid exception did not apply in light of the circumstances present. This is not to say that calls by concerned neighbors accompanied by the appropriate circumstances at the scene can never satisfy the emergency aid exception; we only decide that the trial court did not err in finding that the emergency aid exception did not apply to the situation faced by Officers Hall and Semonin. In other words, when objectively viewed, the exigencies of the situation were *not* so compelling as to render a warrantless entry and search reasonable under the circumstances. *See Mincey,* 437 U.S. at 394. Instead, their entry was based on the mere possibility that there might be someone inside who might be in need of assistance. Such is insufficient to warrant entry under the emergency aid exception. *See Nelms,* 513 Fed.Appx. at 545.

{¶14} The State's sole assignment of error is overruled.

III.

{¶15} In light of the foregoing, we affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

8

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT


HENSAL, J.
WHITMORE, J.
CONCUR.


APPEARANCES:

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellant.

DAVID GLENN PHILLIPS, Attorney at Law, for Appellee.

WALTER T. MADISON, Attorney at Law, for Appellee.

ANTHONY JORDAN, Attorney at Law, for Appellee.