[Cite as *State v. Wagner*, 2014-Ohio-5548.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101153**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**TERELLE L. WAGNER**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-579793-A

**BEFORE:** McCormack, J., Kilbane, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 18, 2014

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1350 Standard Building
1370 Ontario Street
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: John D. Kirkland
Assistant County Prosecutor
9th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1}   Defendant-appellant, Terelle Wagner, appeals from his conviction of carrying a concealed weapon and having weapons while under disability.   On appeal, he claims the trial court erred in denying his motion to suppress the evidence.   Finding no merit to his appeal, we affirm the trial court's judgment.

{¶2}   Wagner was charged with carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree, and having weapons while under disability, in violation of R.C. 2923.13(A)(3), a felony of the third degree.   He filed a motion to suppress the evidence.   The trial court denied the motion after a hearing.   Wagner then pleaded no contest. The trial court found him guilty of the offenses and imposed one year of community control sanctions.

{¶3} On appeal, Wagner raises one assignment of error, claiming the trial court erred in denying his motion to suppress.

### Testimony at the Suppression Hearing

{¶4}   While on patrol at around 8:00 p.m on October 30, 2010, several police officers received a dispatch call indicating a person being held and a gun was involved, on a house on Walton Avenue, Cleveland.   Officer Neagu was asked to assist Officers Schade and Sauders. Officer Neagu testified that he arrived at the scene within ten minutes.   He and the other two officers walked up to the house and knocked on the front door.   A male, later identified as Kenneth Schoffner, answered the door, and the officers advised him the reason of the presence of the officers.   Schoffner let the officers in.   Officer Neagu testified as follows:

Q.  What did you do when you got to the residence?

A.  We knocked on the front door. Person answered the door. We advised him why we were there, that we had received a call to check about a person being held against their will. He said there was no one there being held against their will. Obviously given the severity of the situation, we asked if he minded if we went in and checked and he had no problem with that and let us in.

{¶5} Officer Shade's testimony was consistent with a consented entry. He testified:

* * *A male did answer the door. I don't recall his name or anything like that. He answered the door and then PO Sauders had a brief
conversation, stating why we are here, that we are here for a male held against his will and I don't recall what the male said at that point, but all I remember is they made entry to the door with the male stating that I guess they were allowed, and I checked the upstairs.

{¶6}  While Officer Shade checked the upstairs unit of the house, the other officers followed Schoffner into the downstairs unit. The apartment looked "abandoned" and in disarray. It was also dark. The only lights that were on came from the kitchen area. The officers had to use their flashlights. Another man stood in the darkness in the dining room area. Officer Neagu found it peculiar that this man, later identified as Wagner, was just standing there in the darkness. Because of the nature of the dispatch call, Officer Neagu asked the two men if there was anyone else in the house. Both said no.

{¶7}  At that point, Officer Neagu was standing with his back to a door. To ensure his safety, he turned around and opened the door, which revealed a closet in which a male was standing in the pitch dark with his back to the doorway. Officer Neagu ordered the man out of

the closet and immediately ordered all three men on the ground. The officers then handcuffed them and patted them down for weapons. While patting down Wagner, Officer Neagu felt a magazine clip. Wagner admitted he had a gun on him. A loaded gun was found on his waistband.

{¶8} Officer Fairchild testified that he removed the gun from Wagner's waistband. It was a semiautomatic handgun, a 0.380 Hi Point. Two other officers testified. Officer Schuler testified that he and his partner, Officer Lozinak, heard a Code One radio broadcast regarding a male being held by a gun. When they arrived at the house, the men in the house were already detained by the other officers. He explained Code One is the most serious radio broadcast. Officer Shade testified he checked the upstairs unit while the other officers went into the downstairs unit — Wagner's apartment.

{¶9} Wagner testified on his own behalf. He admitted to prior offenses of drug trafficking, burglary, and having weapons while under disability. He testified that he shared the apartment with Schoffner and Schoffner's then-girlfriend. Schoffner's sister and her boyfriend also stayed there but had moved out. On the day of the incident, an acquaintance Juan Broom — the man standing inside the closet, was there. Wagner explained the house was in disarray because they were packing up to move out of the house. He stated that before the police came, he, Schoffner, and Broom rolled up some joints and were about to smoke. Wagner stated he recognized the voice in the 911 call as the voice of a friend, "Nook," but could not explain why "Nook" made the call.

{¶10} Although the "dispatch narrative" in the police report in this case contained a notation "unsure if this is real or a prank," the officers were not aware of the uncertainty.

**Standard of Review**

**{¶11}** An appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254, ¶ 22 (8th Dist.). Once we accept the factual findings as true, however, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Lloyd*, 126 Ohio App.3d 95, 709 N.E.2d 913 (7th Dist.1998).

**{¶12}** Wagner claims the anonymous tip did not provide the police with probable cause to make a warrantless entry and search of the home.

**{¶13}** Our review of the suppression hearing transcript shows that the police entered Wagner's apartment with consent. However, even if the consent was not clearly reflected by the testimony, as Wagner claims, the police entry would qualify under the emergency-aid or exigent-circumstance exception to the Fourth Amendment's warrant requirement.

### Emergency-Aid or Exigent-Circumstance Exception

**{¶14}** Warrantless searches are presumptively unconstitutional, but several exceptions to the warrant requirement have been delineated by the courts, including the one pertinent to this case, the "community-caretaking exception," which courts sometimes refer to as the "emergency-aid exception" or "exigent-circumstance exception*." State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 15. The exception is based on a recognition that

> [p]olice officers are not simply criminal law enforcers, charged with investigating criminal conduct and developing and maintaining evidence of crime. They have other roles, one of which is their community health, safety, and protection role. Police officers are charged with the duty to prevent crime, preserve the peace, and protect persons and property.

*State v. Russell*, 127 Ohio App.3d 414, 417, 713 N.E.2d 56 (9th Dist.1998), citing *State v. Hyde*, 26 Ohio App.2d 32, 33, 268 N.E.2d 820 (9th Dist.1971).

{¶15} Accordingly, "'[t]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.'" *State v. Nields*, 93 Ohio St.3d 6, 16, 752 N.E.2d 859 (2001), quoting *Mincey v. Arizona*, 437 U.S. 385, 391, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). "'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'" *Dunn* at ¶18, quoting *Wayne v. United States* , 318 F.2d 205, 212 (D.C.Cir.1963) (the community-caretaking/emergency-aid exception allows a law-enforcement officer to act without a warrant when the officer has objectively reasonable grounds to believe that there is an immediate need for the officer's assistance to protect life or prevent serious injury); *Hyde, supra* (the emergency-aid exception to the warrant requirement is satisfied by a showing the police officers had reasonable grounds to believe that some kind of emergency existed). "The ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). "Reasonable belief is assessed from the facts and circumstances known to the officers, and from their point of view." *Lakewood v. Simpson*, 8th Dist. Cuyahoga No. 80383, 2002-Ohio-4086, ¶ 14, citing *State v. Robinson*, 103 Ohio App.3d 490, 496, 659 N.E.2d 1292 (1st Dist.1995).

{¶16} We are aware that the dispatch here was based on an anonymous tipster, the least reliable among different classes of informants. However, whether an anonymous tip provides reasonable suspicion or probable cause is determined by the totality of the circumstances. *Navarette v. California*, 572 U.S. ___, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014).

{¶17} Here, although there appeared to be a notation in the dispatcher's note that the call might be a prank, the officers were not aware of that uncertainty. The officers believed they were responding to a Code One dispatch, the highest priority call, involving the presence of a gun and a person in imminent harm's way. The courts have noted that "'[t]he business of policemen and firemen is to act, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation of the judicial process.'" *State v. Johnson*, 8th Dist. Cuyahoga No. 96983, 2012-Ohio-1344, ¶ 11, quoting *Wayne* at 212. The entry, if indeed without consent as Wagner claims, was justified by the officers' reasonable belief that entering the residence was necessary to investigate what appeared to be an emergency. *See Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037 (the court cited with approval a Florida Supreme Court case that held that the warrantless entry and search of an apartment in response to a call indicating that a person in the apartment had threatened to kill himself was lawful because of exigent circumstances indicating the need for help).

{¶18} Once the officers entered the apartment, their suspicion of a potential criminal activity was not dispelled. They saw a dark apartment in disarray and a male standing in the darkness. There was no TV watching or other usual household activities going on in the apartment. Immediately after the two men in the apartment assured the officer that no one else was in the apartment, the officer opened a door behind him — understandably to secure the officers' safety — a third man was found standing inside the pitch-dark closet, contradicting the two men's representation. Under these circumstances, the officers' belief they had an immediate need to protect themselves was prudent and not unreasonable. They were, of necessity, entitled to search the three men for weapons to ensure their own safety. As the Supreme Court of Ohio cautioned, "'[w]e cannot blind ourselves to the need for law

enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest.'" *State v. Andrews*, 57 Ohio St.3d 86, 89, 565 N.E.2d 1271, quoting *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**{¶19}** For the foregoing reasons, we overrule the assignment of error. The trial court's judgment denying the motion to suppress the evidence is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

MARY EILEEN KILBANE, P.J., and
EILEEN T. GALLAGHER, J., CONCUR