[Cite as *State v. Trego*, 2017-Ohio-6932.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

KENNETH R. TREGO,

    DEFENDANT-APPELLANT.

CASE NO. 2-17-04

O P I N I O N

Appeal from Auglaize County Municipal Court
Trial Court No. 16TRC4799

**Judgment Affirmed**

Date of Decision: July 24, 2017

APPEARANCES:

    *Andrew R. Bucher* for Appellant

    *Randy A. Lamarr, Jr.* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Kenneth R. Trego ("Trego") brings this appeal from the judgment of the Auglaize County Municipal Court denying his motion to suppress the evidence based upon an improper stop. For the reasons set forth below, the judgment is affirmed.

{¶2} On July 20, 2016, Trego was driving his vehicle in Auglaize County when a concerned citizen called 911 to report a driver who may have been impaired. The citizen identified himself and told the dispatcher that the vehicle was traveling at 20 mph in a 50 mph zone, was weaving within its lane, and was jerking back and forth. The citizen also indicated that the driver was also braking frequently. The citizen followed the vehicle while on the phone with the 911 dispatcher and continued to report his location and observations, including a description of the driver. The dispatcher notified Officer Chris McKinney ("McKinney") of the New Bremen Police Department who responded to the vehicle's location. Once McKinney was in view of the citizen, the citizen pointed out the vehicle that was being followed. McKinney then initiated a traffic stop to learn the condition of the driver.

{¶3} After stopping the vehicle, McKinney identified the driver of the vehicle as Trego and determined that he matched the description of the driver given by the citizen. McKinney detected a strong odor of an alcoholic beverage coming from Trego and also observed that Trego's eyes appeared red and glassy. Trego

was subsequently arrested and cited with an OVI charge in violation of R.C. 4511.19(A)(1)(a). Doc. 1. On October 4, 2016, Trego filed a motion to suppress any evidence from the stop. Doc. 28. Trego alleged that McKinney lacked reasonable suspicion to stop Trego's vehicle. A hearing was held on the motion on November 17, 2016. Doc. 40. On November 21, 2016, the trial court denied the motion to suppress. *Id.* On February 9, 2017, Trego changed his plea from one of not guilty to no contest. Doc. 52. The trial court then found Trego guilty of the charged offense and sentenced Trego to twenty days in jail with all jail time suspended provided Trego complied with the terms of community control. *Id.* The trial court also ordered Trego to pay a fine of $375.00 and suspended his license for six months. *Id.* Trego filed his notice of appeal on February 27, 2017. Doc. 62. On appeal Trego raises the following assignments of error.

**First Assignment of Error**

**The trial court did not rely upon competent, credible evidence in forming its findings of fact.**

**Second Assignment of Error**

**The trial court erred [when] it found the seizure of [Trego] did not violate the Fourth Amendment of the United States Constitution or Article I, §14 of the Ohio Constitution.**

For the purpose of clarity, we will address the assignments of error out of order.

*Constitutionality of the Stop*

{¶4} In the second assignment of error, Trego claims that the trial court erred in denying his motion to suppress because the officer lacked a reasonable suspicion of criminal activity to stop his vehicle.

> **While [*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] and much of its progeny stand for the proposition that a police officer generally needs a reasonable suspicion, based on specific and articulable facts, that an occupant of a vehicle is or has been engaged in *criminal* activity, nothing in the Fourth Amendment requires that the "specific and articulable facts" relate to suspected criminal activity. Were we to insist that every investigative stop be founded on such suspicion, we would be overlooking the police officer's legitimate role as a public servant designed to assist those in distress and to maintain and foster public safety. That is, law enforcement officers may legitimately approach persons and vehicles for purposes other than criminal investigation.**

*State v. Norman*, 136 Ohio App.3d 46, 53, 1999-Ohio-961, 735 N.E.2d 953 (3d Dist.).

> **Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers * * * frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation or acquisition of evidence relating to the violation of a criminal statute."**

*Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706. Under appropriate circumstances, an officer may intrude on a person's privacy to perform a community caretaking function without reasonable, articulable suspicion of criminal activity. *Norman, supra* at 54. The key question is whether the action of the officer is reasonable given the circumstances. *Id.* "When approaching a vehicle for safety reasons, the police officer must be able to point to reasonable, articulable facts upon which to base [any] safety concerns." *Id.*

{¶5} In 2012, the Ohio Supreme Court addressed the issue of community caretaking functions and the Fourth Amendment in *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037. The facts in *Dunn* were that dispatch received a call indicating that a driver was armed and had indicated specific plans to kill himself. *Id.* at ¶ 2. The caller identified the vehicle that was being driven, the identity of the driver, and gave the police the location of the vehicle. *Id.* An officer saw the vehicle and subsequently stopped the vehicle. *Id.* at ¶ 3-4. The defendant was later indicted on one count of improper handling of a firearm in a motor vehicle. *Id.* at 7. The defendant filed a motion to suppress claiming that the stop of his vehicle violated his Fourth Amendment rights. *Id.* The trial court overruled the motion to suppress finding it to be a reasonable. *Id.* at ¶ 8. The appellate court reversed the conviction and the State appealed to the Supreme Court of Ohio. *Id.* at ¶ 9. The Court held "that the [community caretaking] exception to the Fourth Amendment warrant requirement allows police officers to stop a person

to render aid if they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious injury. *Id*. at ¶ 22.

{¶6} Here, the parties stipulated to the authenticity of the recording of the 911 call. Dispatch received a call a little after 3:00 a.m. from a person who identified himself by name, address, and phone number. He told the dispatch operator that he was following and watching a red Honda which was being jerked around within its lane of travel, was traveling excessively slow, and was frequently braking. The caller told dispatch of the location as he continued to follow the vehicle. He indicated that he believed the driver might have something wrong as he appeared to be elderly because he had gray hair. Based upon this information, dispatch contacted McKinney and informed him of a possible reckless driver. Tr. 4.

{¶7} McKinney testified that based upon the information relayed to him by dispatch he had no concerns of criminal activity. Tr. 5. Instead, McKinney was concerned that it may be an elderly person who was lost or had vehicle problems. Tr. 5. These safety concerns were why McKinney decided to stop the vehicle. Tr. 5. When McKinney was near the caller and the red vehicle, the caller put his hand out of the window and pointed out the car that was the subject of the call. Tr. 7. This identification of the vehicle and the driver by the caller, the time of the night, and the actions of the driver described by the caller were the facts upon which McKinney relied in his decision to stop the vehicle. Tr. 8. These facts do provide

reasonable, articulable facts upon which a reasonable person could conclude that McKinney was exercising his caretaking function. This falls within an exception to the Fourth Amendment. Thus, the second assignment of error is overruled.

*Competent, Credible Evidence*

**{¶8}** In his first assignment of error, Trego alleges that the trial court did not rely upon competent, credible evidence in denying the motion to suppress. "An appellate review of the trial court's decision on a motion to suppress involves a mixed question of law and fact." *State v. Fittro*, 3d Dist. Marion No. 9-14-19, 2015-Ohio-1884, ¶ 11.

> **When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.** *State v. Mills* **(1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.** *State v. Fanning* **(1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.** *State v. McNamara* **(1997), 124 Ohio App.3d 706, 707 N.E.2d 539.**

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

**{¶9}** Trego in this case stipulated to the 911 call being admitted. Tr. 2. Although the caller was present at the suppression hearing, the parties agreed that they did not need him to testify and that he was released from his subpoena. Tr. 2. The remainder of the evidence was the testimony of McKinney. Trego cross-

examined McKinney. Trego presented no evidence in support of his motion. The trial court found the recording and the testimony of McKinney to be credible and persuasive. On appeal, Trego presents no argument as to why the evidence was not credible other than the legitimacy of the stop, which was addressed above. Given that there was evidence presented and no argument was presented as to why it was not credible, this court does not find that the trial court erred in relying on it. The first assignment of error is overruled.

{¶10} Having found no error in the particulars assigned and argued, the judgment of the Auglaize County Municipal court is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/hls**