[Cite as *State v. Modreski*, 2024-Ohio-1550.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230511 |
| | | TRIAL NO. 23CRB-6809 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| JAMES MODRESKI, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From:   Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: April 24, 2024

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Phoebe Cates*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellee.

**KINSLEY, Judge.**

{¶1}    Plaintiff-appellant the city of Cincinnati appeals from the trial court's decision granting defendant-appellee James Modreski's motion to suppress evidence obtained during a warrantless search of his home.  In its sole assignment of error, the city contends that the warrantless entry into Modreski's apartment by police was justified by the emergency-aid exception to the warrant requirement.  It does so on the basis of a report made by a social services worker to police.  The report indicated that an infant's mother did not heed the recommendation of her child's physician to take the baby to the hospital following a diagnosis of "failure to thrive."  The report also suggested that the mother and baby resided at the apartment occupied by Modreski.

{¶2}    Because the information conveyed from the social services worker to the police did not suggest that the infant was in need of immediate aid, we agree with the trial court that there were no exigent circumstances justifying the warrantless search of Modreski's home.  Accordingly, we overrule the city's sole assignment of error and affirm the judgment of the trial court.

### *Factual and Procedural Background*

{¶3}    The charges against Modreski arose from an encounter with the police that occurred during a wellness check on his infant granddaughter.  After a warrantless search of his home on April 27, 2023, Modreski was charged with obstructing official business and resisting arrest.  He moved to suppress any evidence obtained from that search, including his arrest.  The trial court held a suppression hearing on September 20, 2023.

{¶4}    At the hearing, the parties stipulated that the officers did not have a warrant to search Modreski's home on the evening of his arrest.  Thus, the state bore

the burden of presenting evidence to justify the search. *See Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988).

{¶5} A critical piece of evidence presented by the state at the suppression hearing was the body-worn camera ("BWC") footage of Officer Nicholas Bicknell. Bicknell arrived at Modreski's apartment at approximately 9:01 p.m. in response to a report from Angel Bell, a case worker with Hamilton County Children's Services. The footage from Bicknell's BWC showed him arriving outside the apartment building and being greeted by Bell, who provided information as to the basis of the request for assistance. According to Bell, an infant in the apartment had previously been hospitalized due to malnourishment, and the infant's mother requested that the infant be released from the hospital with a follow-up doctor's appointment instead. At the follow-up appointment, which had occurred earlier that day, the doctor recommended that the infant be admitted to the hospital, because the infant had lost more weight. The infant's mother did not follow the recommendation, and Children's Services was contacted.

{¶6} On the body-worn camera video, Bell indicated that she had rung the doorbell to the apartment and that an older gentleman had answered. He confirmed that the mother and infant did in fact live at the residence, but did not allow Bell to speak to them without confirming who she was and why she was there. She explained to the officers that she was not permitted to disclose her purpose for the wellness check to the man who answered the door since she did not know who he was. In response to Bicknell's questions, Bell agreed that her purpose for being at the property was to "talk to mom."

{¶7} After speaking with Bell, the officers asked Modreski to open the door. The officers did not identify themselves or explain why they were there. They then told Modreski they would arrest him for obstructing official business if he did not open the door. When they told Modreski that they needed to speak with the infant's mother, Modreski responded without opening the door that she was not there.

{¶8} The footage next shows Modreski's neighbor opening the main door of the building and inquiring about why the officers were there. Modreski's neighbor asked if the officers had a warrant and the officers responded that they were there due to a report of a malnourished infant. Modreski's neighbor asked for a few minutes to speak with Modreski and see what was going on with him. The officers disregarded the request, pushed past Modreski's neighbor, and went upstairs to Modreski's unit.

{¶9} When Modreski opened his door, the officers asked him to step outside. Modreski refused, and the officers then arrested him. They conducted a sweep of Modreski's unit for the infant, but they did not find anyone else on the scene.

{¶10} While on the stand at the suppression hearing, Bicknell testified that when Modreski was inside the police cruiser, Bell confirmed that the mother had already taken the infant to the hospital.

{¶11} Bell also testified to the events depicted in Bicknell's BWC footage. On cross-examination, Bell conceded that she was only there to speak to the infant's mother.

{¶12} Following the hearing, the trial court granted Modreski's motion and held that exigent circumstances did not exist for the officers to conduct a warrantless search of Modreski's home.

{¶13} The city now appeals.

### *Exigent Circumstances*

**{¶14}** In its sole assignment of error, the city argues that the trial court erred in granting Modreski's motion to suppress.

**{¶15}** "Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's factual findings if they are supported by competent and credible evidence, but we review the court's legal conclusions de novo." (Citations omitted.) *State v. Buck*, 2017-Ohio-8242, 100 N.E.3d 118, ¶ 6 (1st Dist.).

**{¶16}** In *Buck*, we explained the exigent circumstances exception to the warrant requirement:

Warrants are generally required to search a person's home or his person unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. Where exigent circumstances exist, a warrantless search is reasonable because there is compelling need for official action and no time to secure a warrant.

Exigent circumstances allow a warrantless entry into a residence if probable cause to arrest or to search exists. Police may make a warrantless entry into a residence to prevent the imminent destruction of evidence or to engage in hot pursuit of a fleeing suspect.

The United States Supreme Court and the Supreme Court of Ohio have recognized a narrower subset of exigent circumstances where law enforcement officers need to respond to emergency situations to protect people from death or serious injury. The emergency-aid exception allows police to enter a home without a

warrant and *without probable cause* when they reasonably believe, based on specific and articulable facts, that a person within the home is in need of immediate aid. Nevertheless, a warrantless entry justified by the emergency-aid exception must be strictly circumscribed by the exigency that initially justified it, and once the emergency has been alleviated, further intrusion must be sanctioned by a warrant.

(Internal quotation marks and citations omitted.) *Id.* at ¶ 19-21.

{¶17} By its own terms, the application of the emergency-aid exception is limited to circumstances requiring *immediate* aid. *Id.* at ¶ 21. Indeed, the touchstone of the emergency-aid exception is the kind of immediacy that characterizes an emergency. As one Ohio court has explained, this type of exigent circumstance exists based on "the need to assist persons who are seriously injured or threatened with such injury." *State v. Gooden*, 9th Dist. Summit No. 23764, 2008-Ohio-178, ¶ 5. It is grounded in the "need to protect or preserve life." *Id.*

{¶18} In discussing the applicability of the emergency-aid exception, the Ohio Supreme Court has used terms that resound in extreme distress. For example, in *State v. Applegate*, 68 Ohio St.3d 348, 350, 626 N.E.2d 942 (1994), citing *Wayne v. United States*, 318 F.2d 205, 212 (D.C.Cir.1963), the court explained that exigent circumstances counsel against taking time to obtain a warrant because "people could well die." The court has also characterized situations befitting the emergency-aid exception as placing "life or limb * * * in jeopardy." *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 21. We therefore understand the emergency-aid exception to excuse the warrant requirement in circumstances where the time it takes to obtain a warrant may place a person's life in danger.

6

{¶19}  Case law applying the emergency-aid exception further elucidates the contours of just what constitutes a need for immediate aid.  For example, in *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 23, police officers received a dispatch regarding an allegedly armed and suicidal person with a plan to take his own life upon reaching a certain destination.  The situation was literally life-or-death.  *Id.*  Because officers had knowledge of the individual's concrete and imminent plan to harm himself, the court held that the officers were justified in effecting a warrantless traffic stop.  *Id.*

{¶20}  Similarly, in *State v. Engle*, 2d Dist. Montgomery No. 25226, 2013-Ohio-1818, ¶ 21, officers properly invoked the emergency-aid exception to search a defendant who was bleeding from his head and staggering.  Engle needed immediate attention to evaluate his head injury, both to protect his life and to prevent further injury from occurring.  *Id.*

{¶21}  Conversely, in *State v. Fisher*, 5th Dist. Fairfield No. 13 CA 35, 2014-Ohio-3029, ¶ 41-42, the court held the record was devoid of specific and articulable facts that a person within the apartment was in need of immediate aid, where police officers responded to a report of domestic violence and could easily see through the window of the apartment that no one was in obvious distress.  While sounds may alert police to a need for immediate aid in a domestic violence case, the court noted that there were no sounds noted coming from the residence.  *Id.*  at ¶ 40.  On these facts, the mere allegation that domestic violence was taking place inside the apartment was insufficient, without more indicia of an immediate emergency, to justify excusing the warrant requirement.  *Id.*  at ¶ 44.

{¶22} Unlike in *Dunn* and *Engle*, the police officers in *Fisher* did not have a reasonable belief that they needed to render emergency aid or investigate a life-threatening situation. Importantly, in *Dunn* and *Engle*, the immediacy with which the officers needed to act supported a finding of exigent circumstances. There, the officers did not have time to spare. But in *Fisher*, the court noted there were no facts to establish why the officers could not have achieved the same results without violating the sanctity of the residence by obtaining a search warrant. *Fisher* at ¶ 41.

{¶23} The facts of this case are more akin to the situation in *Fisher*. While a report of a malnourished infant is certainly cause for concern, no one testified that that the infant would not survive without immediate medical intervention. Rather, the officers understood from Bell that the infant was not thriving and should be seen at the hospital per a recommendation from her physician. This was not characterized as a life-or-limb emergency risking the infant's survival. To the contrary, Bell characterized the purpose for her presence at the apartment as needing to "talk to mom," not to take custody of the child for the purpose of seeking emergency medical care.

{¶24} The record is therefore devoid of specific and articulable facts that the infant was in need of immediate aid, and, as a result, the emergency-aid exception to the warrant requirement did not apply to the officers' entry and search of Modreski's apartment. We accordingly overrule the city's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

8

Please note:

The court has recorded its own entry on the date of the release of this opinion.