[Cite as *State v. Dawley*, 2016-Ohio-2904.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Sheila G. Farmer, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 15-CA-66 |
| SHERI J. DAWLEY | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:          Criminal appeal from the Fairfield Municipal
                                                          Court, Case No. 15TRC3707

JUDGMENT:                                        Affirmed

DATE OF JUDGMENT ENTRY:          May 9, 2016

APPEARANCES:

For Plaintiff-Appellee                         For Defendant-Appellant

DANIEL COGLEY                             SCOTT WOOD
Lancaster City Law Director's Office    120 1/2 E. Main Street
123 E. Chestnut Street                     Lancaster, OH 43016
Lancaster, OH 43016

*Gwin, J.,*

**{¶1}** Appellant, Sheri J. Dawley ["Dawley"] appeals the October 30, 2015 judgment of the Fairfield County Municipal Court, Fairfield County, Ohio overruling her motion to suppress.

*Facts and Procedural History*

**{¶2}** In the case at bar, the parties submitted a stipulation to the trial court agreeing that for purposes of the motion to suppress, "the facts as set forth in the narrative report of Officer Nickolas Baehr are a true and accurate statement of the facts." The trial court adopted those facts, and attached a copy of Officer Baehr's report to its judgment entry overruling Dawley's motion to suppress.

**{¶3}** On April 13, 2015, Officer Baehr of the Pickerington Police Department was traveling in a marked cruiser behind Dawley on his way to the Fairfield County Jail. Officer Baehr observed Dawley's vehicle directly in front of his cruiser,

[D]rifted left of its lane with both driver side tires crossing the yellow lane marker and onto the rumble strip. The driver corrected and came back to center, a few seconds later, the vehicle drifted right of its lane across the center white striped line and into the right lane. The suspect vehicle almost struck a vehicle traveling next to it, however the vehicle in the right lane slowed down and avoided the collision. The suspect vehicle corrected back to the left lane and then accelerated. I paced the vehicle's speeds up to 75 MPH in a 60 MPH zone. The suspect vehicle slowed back down to 65 MPH still in the 60 MPH zone and then I observed the vehicle drift left of its lane.

This time all 4 tires crossed left of its lane and across the yellow painted lane marker before the vehicle corrected back to center.

{¶4} Officer Baehr attempted to radio dispatch to advise them of the situation, but due to technical difficulties, could not reach the dispatcher. As Officer Baehr approached a red light Officer Baehr observed, "the vehicle drift right of its lane and straddle the white striped center markers and then correct itself before coming to a stop." Officer Baehr called his supervising sergeant and informed him of Dawley's driving and his belief that Dawley was impaired and posed a danger to other motorists. During this call, another motorist pulled beside Officer Baehr and expressed his concerns about Dawley's erratic driving.

{¶5} When the light turned green, Officer Baehr initiated a traffic stop. He made contact with Dawley and,

> [I]mmediately I observed her glassy, droopy eyes. Ms. Dawley also had slow slurred speech and a dry mouth. Ms. Dawley stated she realized she went off the roadway and apologized for her driving, but that she was tired and on her way home from work. I asked for Ms. Dawley's driver's license for identification, at which time she appeared to fall asleep for a quick second.

{¶6} Officer Baehr subsequently spoke to and obtained a statement from the other driver who had expressed his concern earlier at the traffic signal. The driver had pulled in behind Officer Baehr's cruiser while he was speaking to Dawley.

{¶7} Officer Bahr removed the keys from the ignition to prevent Dawley from leaving the scene. Officer Baehr waited for Trooper Wilson of the Ohio State Highway Patrol to arrive and conduct an investigation into Dawley's impairment.

{¶8} Trooper Wilson arrested Dawley and charged her with one count of operating a vehicle under the influence of alcohol and/or a drug of abuse, two counts of driving under suspension, and driving outside of marked lanes.

{¶9} On August 18, 2015, with leave of court, Dawley filed a motion to suppress all evidence obtained by law enforcement because of the traffic stop. The issue was submitted to the trial court by way of stipulation and written argument by the parties.

{¶10} On October 30, 2015, the trial court overruled Dawley's motion to suppress.

{¶11} On December 16, 2015, Dawley entered a no contest plea to the OVI charge.

*Assignment of Error*

{¶12} Dawley raises one assignment of error,

{¶13} "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."

*Analysis*

{¶14} Dawley contends the initial traffic stop by Officer Baehr was unlawful and unconstitutional because a Pickerington police officer on a state highway outside of the City of Pickerington made the stop in violation of statutes and the Ohio Constitution.

### ***Standard of Review.***

{¶15} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d

71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, *supra*. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

### *Officer Baehr's stop was lawful pursuant to the community caretaking exception to the Fourth Amendment.*

{¶16} R.C. 4513.39(A) provides state highway patrol and county sheriffs or their deputies have the exclusive authority to make arrests on interstate highways for specific offenses.[1] The Supreme Court of Ohio has construed R.C. 4513.39 to mean, "A township

---

[1] Specifically, the statute precludes township police officers who are not commissioned peace officers, and commissioned peace officers serving a township with a population of fifty thousand or less from enforcing traffic laws on state highways.

police officer has no authority to stop motorists for any of the offenses, enumerated in that statute, which have been committed on a state highway outside municipal corporations." *State v. Holbert*, 38 Ohio St.2d 113, 311 N.E.2d 22(1974), paragraph two of the syllabus. In *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496 a township officer stopped the defendant for a marked lane violation on an interstate highway that was outside of her authority in violation of R.C. 4513.39. The Ohio Supreme Court held that suppression of evidence obtained from the stop was proper stating, "A traffic stop for a minor misdemeanor made outside a police officer's statutory jurisdiction or authority violates the guarantee against unreasonable searches and seizures established by Article I, Section 14 of the Ohio Constitution."

{¶17} The case at bar is distinguishable from *Brown.* This was not a simple case of a minor misdemeanor traffic violation as was the case in *Brown.* In the case at bar, a City of Pickerington police officer observed numerous instances of dangerous and erratic driving leading him to conclude that the driver was impaired. R.C. 2925.03 provides in relevant part,

(E) In addition to the authority granted under division (A) or (B) of this section:

(1) A sheriff or deputy sheriff may arrest and detain, until a warrant can be obtained, any person found violating section 4503.11, 4503.21, or 4549.01, sections 4549.08 to 4549.12, section 4549.62, *or Chapter 4511.* or 4513. of the Revised Code on the portion of any street or highway that is located immediately adjacent to the boundaries of the county in which the sheriff or deputy sheriff is elected or appointed.

* * *

(3) *A police officer* or village marshal appointed, elected, or employed by a municipal corporation may arrest and detain, until a warrant can be obtained, any person found violating any section or chapter of the Revised Code listed in division (E)(1) of this section on the portion of any street or highway that is located immediately adjacent to the boundaries of the municipal corporation in which the police officer or village marshal is appointed, elected, or employed.

{¶18} Unfortunately, there was no testimony under oath by Officer Baehr on the issue of whether the stop in this case occurred "immediately adjacent" to the boundaries of his jurisdiction. In any event, we note that Officer Baehr was in uniform and in a marked police cruiser. Officer Baehr did not cease to be a police officer simply because he was outside of his jurisdiction. The officer embarked upon a course of action after realizing that the public may be in danger. His prompt action may have saved Dawley and innocent members of the public from a needless tragedy.

{¶19} In Ohio, the Supreme Court has held,

The community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows a law-enforcement officer with objectively reasonable grounds to believe that there is an immediate need for his or her assistance to protect life or prevent serious injury to effect a community-caretaking/emergency-aid stop.

*State v. Dunn,* 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, syllabus. In *Dunn,* the Ohio Supreme Court cited ABA Standards for Criminal Justice § 1–2.2 for the

proposition that "police officers are duty-bound to provide emergency services to those who are in danger of physical harm." *Dunn*, ¶20. Here, Officer Baehr's actions must be examined in light of what actions were objectively reasonable for a law enforcement officer in the role of a community caretaker to take under the circumstances. *Brigham City v. Stuart*, 547 U.S. at 403, 405-406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

{¶20} We think Officer Baehr's actions were reasonable under the circumstances. He personally observed erratic and dangerous driving, and received a report from a concerned motorist that mirrored the officer's own concerns. In these circumstances, the officer had an objectively reasonable basis for believing both that the driver might need help and that the public was in danger if she continued to drive while he waited for an officer within the jurisdiction to stop her. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City,* 547 U.S. at 403,126 S.Ct. 1943, 164 L.Ed.2d 650, *quoting Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 209 (1978). *Accord State v. Dunn*, 131 Ohio St.3d 325, 2012–Ohio–1008, 964 N.E.2d 1037, syllabus. We find such and emergency or exigency existed in the case at bar.

{¶21} The potential emergency facing Officer Baehr was the need to stop a motorist who was driving erratically and endangering the public. Officer Baehr personally observed the behavior. His conclusions are objectively reasonable as can be seen from the fact a citizen was concerned enough to stop on two occasions to alert Officer Baehr to the danger Dawley posed to other innocent citizens traveling the roadways.

{¶22}  Accordingly, Officer Baehr's initial traffic stop of Dawley was lawful pursuant to the community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement.

{¶23}  For the foregoing reasons, Dawley's sole assignment of error is overruled.

{¶24}  The judgment of the Fairfield County Municipal Court is affirmed.


By Gwin, J.,

Farmer, P.J., and

Wise, J., concur