[Cite as *State v. Weemhoff*, 2022-Ohio-4263.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 22CA26 |
| | : | |
| CODY WEEMHOFF | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Richland County Court of Common Pleas, Case No. 2021CR236R

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      November 29, 2022

APPEARANCES:

For Plaintiff-Appellee:

GARY BISHOP
RICHLAND CO. PROSECUTOR
38 South Park St., 2nd Floor
Mansfield, OH 44902

For Defendant-Appellant:

JONATHON W. SPAULDING
SPAULDING & KITZLER, LLC
3 North Main St.
Mansfield, OH 44902

*Delaney, J.*

{¶1}   Appellant Cody Weemhoff appeals from the April 7, 2022 Sentencing Entry of the Richland County Court of Common Pleas.  Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}   The following evidence is adduced from the record of appellant's suppression hearing.

{¶3}   This case arose on March 22, 2021, around 10:15 p.m., when Jane Doe left her workplace and traveled south on Lexington-Springmill Road in Mansfield, Ohio.[1] Doe's vehicle was behind a truck at a red light at Park Avenue. When the light turned green, the driver of the truck hesitated a moment and did not proceed, leading Doe to speculate that the driver might be on the phone or impaired. As Doe continued to follow the truck, however, it began to swerve within its lane and changed speed, slowing down and speeding up.

{¶4}   It was dark and traffic was light. At one point, a vehicle approached from the opposite direction. Doe was alarmed to watch the truck swerve out of its lane and almost hit the approaching vehicle head-on. Doe testified the truck "was literally in the left lane." T. 14. Doe called 911 as the truck continued to swerve in its lane. As Doe spoke with 911, the truck sped up and Doe attempted to keep up. Doe did not exceed the speed limit, however, and the truck outdistanced her.

---

[1] Jane Doe provided her name and identifying details when she made the 911 call, and her identity is in the record.

{¶5} Upon cross-examination, Doe said she wrote a statement for police but did not generally want to get involved. She was adamant that the truck almost caused a head-on collision, and frightened her enough that she felt compelled to call 911.

{¶6} Ptl. Ryan Riggleman is an officer with the Lexington Police Department and worked third shift on March 22, 2021. Dispatch advised that a light-colored truck was southbound on Lexington-Springmill Road approaching the Village of Lexington. Dispatch noted the truck had a toolbox in the back and almost struck another vehicle head-on. Riggleman sat stationary at Heartland Church and waited for a vehicle matching the truck's description. Heartland Church is approximately a mile and a half outside the Village limits.

{¶7} Riggleman testified he was concerned that the truck almost caused a collision, endangering the well-being of other motorists. Riggleman did not know who was driving the truck and what his or her condition might be. He maintained contact with dispatch, which was still on the line with Jane Doe, for updates about the truck's location and description. Riggleman was aware of the identity of the 911 caller and her location relative to the truck. He intended to find the truck and perform a traffic stop.

{¶8} Riggleman soon observed a large heavy-duty Ford truck pass Heartland Church. He pulled out behind the truck and followed it toward the Village of Lexington. Just outside the Village limits, he observed the truck travel left of center. Riggleman turned on his lights and initiated a traffic stop. It took the truck a few moments to stop; between the initiation of the stop and the truck pulling over onto Sherwood Drive, the stop was within Village limits. Riggleman and his sergeant approached the truck and found appellant driving with one male passenger.

{¶9} On cross-examination, Riggleman acknowledged that upon learning of the 911 call, he waited at the church for appellant to drive by, despite the fact that the church was out of his jurisdiction. Riggleman explained that based upon appellant's position when the 911 call came in, appellant could have gone in any of three directions: he could have turned on Hanley Road and Riggleman could have observed him and alerted another jurisdiction; he could have turned right on Cockley Road, which would have brought him into Lexington; or he could have continued on Lexington-Springmill Road, which turns into Plymouth Street in the Village of Lexington. Appellant took the third route. Riggleman also sought to observe the vehicle himself before determining whether a traffic stop was appropriate.

{¶10} When the truck passed the church, Riggleman followed him, and initiated a traffic stop when he witnessed the left-of-center violation. He did not wait for appellant to enter the Village of Lexington. Riggleman testified he didn't know what appellant might do next; appellant could have easily run off the road and he was not driving "as a normal person would."

{¶11} At the conclusion of the suppression hearing, the trial court took the matter under advisement and later overruled the motion to suppress via judgment entry.

{¶12} Appellant was charged by indictment with one count of OVI pursuant to R.C. 4511.19(A)(1)(a) and 4511.19(G)(1)(d) [Count I]; one count of OVI pursuant to R.C. 4511.19(A)(1)(f) and 4511.19(G)(1)(d) [Count II]; and OVI pursuant to R.C. 4511.19(A)(2)(a), 4511.19(A)(2)(b), and 4511.19(G)(1)(d) [Count III]. Each charged offense is a felony of the fourth degree and the indictment states appellant was convicted of or pleaded guilty to three OVI violations within ten years of the charged offenses.

{¶13} Appellant entered pleas of not guilty and filed the motion to suppress, asserting that police made an illegal extraterritorial seizure and arrest. Appellee responded with a memorandum contra. The matter proceeded to an evidentiary hearing and the trial court overruled the motion to suppress by judgment entry dated February 15, 2022.

{¶14} On March 7, 2022, appellant entered pleas of no contest upon Counts I and III. Count II was dismissed. Appellant was sentenced to a 30-month term of community control including, e.g., 60 days in a lockdown treatment facility.

{¶15} Appellant appeals from the trial court's judgment entry of conviction and sentence, incorporating the judgment entry overruling his motion to suppress.

{¶16} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶17} "THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS."

**ANALYSIS**

{¶18} In his sole assignment of error, appellant argues the trial court erred in overruling his motion to suppress because the arresting officer lacked authority to execute an extraterritorial traffic stop. We disagree.

{¶19} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030

(1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶20} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶21} In the instant case, appellant argues Riggleman had no authority to effectuate the traffic stop outside his jurisdiction. He points to *State v. Brown,* 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, in which a township officer stopped the

defendant for a marked-lane violation on an interstate highway that was outside of her authority in violation of R.C. 4513.39. The Ohio Supreme Court held that suppression of evidence obtained from the stop was proper stating, "A traffic stop for a minor misdemeanor made outside a police officer's statutory jurisdiction or authority violates the guarantee against unreasonable searches and seizures established by Article I, Section 14 of the Ohio Constitution."

{¶22} In the instant case, we first note a factual distinction: Riggleman observed the left-of-center violation outside his jurisdiction, followed appellant toward his jurisdiction, turned on his lights just outside his jurisdiction, but effectuated the traffic stop inside his jurisdiction. For purposes of the following analysis this is a distinction without a difference, but we are aware that the stop was within the Village of Lexington. Riggleman first observed the truck from the parking lot of Heartland Church, which the trial court found to be adjacent to the Village of Lexington. Appellant does not dispute this finding of fact.

{¶23} The instant case is distinguishable from *Brown.* Riggleman was aware of erratic driving and a near-collision from the 911 caller; he personally observed additional erratic driving. He was not merely investigating a potential minor misdemeanor traffic violation; instead, this was potentially an impaired or distracted driver. *See, State v. Dawley*, 5th Dist. No. 15-CA-66, 2016-Ohio-2904, 65 N.E.3d 79, ¶ 17.

{¶24} R.C. 2935.03 provides in relevant part,

> (E) In addition to the authority granted under division (A)
>
> or (B) of this section:

(1) A sheriff or deputy sheriff may arrest and detain, until a warrant can be obtained, any person found violating section 4503.11, 4503.21, or 4549.01, sections 4549.08 to 4549.12, section 4549.62, *or Chapter 4511.* or 4513. of the Revised Code on the portion of any street or highway that is located immediately adjacent to the boundaries of the county in which the sheriff or deputy sheriff is elected or appointed.

* * *

(3) *A police officer* or village marshal appointed, elected, or employed by a municipal corporation may arrest and detain, until a warrant can be obtained, any person found violating any section or chapter of the Revised Code listed in division (E)(1) of this section on the portion of any street or highway that is located immediately adjacent to the boundaries of the municipal corporation in which the police officer or village marshal is appointed, elected, or employed.

(Emphasis added).

{¶25} The trial court found Heartland Church is adjacent to Riggleman's jurisdiction, and appellant does not challenge that finding of fact; moreover, the traffic stop did occur within Riggleman's jurisdiction.

{¶26} When Riggleman spotted the truck, he was aware that Jane Doe reported erratic driving including a near-collision; he observed a truck matching her description, a heavy-duty vehicle which potentially posed a threat to anyone inside or outside the

vehicle. Riggleman observed the same type of erratic driving Doe described, including failure to maintain the lane of travel. From the point at which he first observed the truck at the church, it could have traveled in any of three directions, including into the Village of Lexington.

{¶27} We reject appellant's implication that Riggleman was not authorized to initiate the traffic stop outside the Village of Lexington, based upon the information available to him and his own observations. In *Dawley*, supra, we acknowledged the community-caretaking exception to extraterritorial jurisdictional problems. In Ohio, the Supreme Court has held:

> The community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows a law-enforcement officer with objectively reasonable grounds to believe that there is an immediate need for his or her assistance to protect life or prevent serious injury to effect a community-caretaking/emergency-aid stop.
>
> *State v. Dunn,* 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, syllabus.

{¶28} In *Dunn,* the Ohio Supreme Court cited ABA Standards for Criminal Justice 1–2.2 for the proposition that "police officers are duty-bound to provide emergency services to those who are in danger of physical harm." *Dunn,* ¶ 20. We examine Riggleman's actions in light of what actions were objectively reasonable for a law enforcement officer in the role of a community caretaker to take under the circumstances. *Dawley*, supra, 2016-Ohio-2904 at ¶ 19, citing *Brigham City v. Stuart,* 547 U.S. 398, 403, 405–406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

{¶29} We find Riggleman's actions to be reasonable under the circumstances. *Dawley*, supra, 2016-Ohio-2904 at ¶ 20. "He personally observed erratic and dangerous driving, and received a report from a concerned motorist that mirrored the officer's own concerns. In these circumstances, the officer had an objectively reasonable basis for believing both that the driver might need help and that the public was in danger if she continued to drive while he waited for an officer within the jurisdiction to stop her." *Id.* "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City,* 547 U.S. at 403, 126 S.Ct. 1943, 164 L.Ed.2d 650, *quoting Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). *Accord State v. Dunn,* 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, syllabus. We find such an emergency or exigency existed in the instant case.

{¶30} The potential emergency facing Riggleman was the need to stop a motorist who was driving erratically and endangering the public. *Id.* The officer personally observed the left-of-center violation and his conclusions are objectively reasonable from the perspective of Jane Doe, who was concerned enough to call 911 and report the danger appellant posed to other innocent citizens traveling the roadways. *Id.*

{¶31} The trial court properly overruled appellant's motion to suppress and his sole assignment of error is overruled.

**CONCLUSION**

{¶32} Appellant's sole assignment of error is overruled and the judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, J.,

Wise, Earle, P.J. and

Gwin, J., concur.